# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT MEYERS, | ) |
| | ) |
| Plaintiff, | )   2:12-cv-1258 |
| | ) |
| v. | ) |
| | ) |
| THE CALIFORNIA UNIVERSITY OF | ) |
| PENNSYLVANIA, GREG HARRISON, | ) |
| RICHARD MIECZNIKOWSKI, JIM BOVÉ and | ) |
| SCOTT LLOYD, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. No. 26), with brief in support, filed by California University of Pennsylvania ("CalU" or "the University"), Greg Harrison, Richard Miecznikowski, Jim Bové, and Scott Lloyd (collectively "Employee Defendants"), with brief in support (Doc. No. 27). Plaintiff Robert Meyers filed a response (Doc. No. 28) and brief in opposition (Doc. No. 29). Accordingly, the motion is ripe for disposition.

## I. Background

As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party. The following background is drawn from the Amended Complaint, and the factual allegations therein are accepted as true for the purpose of this opinion.

### A. Factual Allegations

According to the Amended Complaint, Plaintiff is a well-recognized graphic designer with many professional and academic achievements to date. The accolades attributed to Plaintiff include recognition by juried international, national, and regional design contests for the quality

of his work and the receipt of over two-hundred awards and publications, including a book entitled *Inspire Us Through the Years, the 125-Year History of Shady Side Academy* and an article entitled "General Motors: 100th Anniversary, A Century of Engineering Innovation, 1908-2008" written for *Automotive Engineering International*. Throughout his career, Plaintiff also obtained positions as an art professor and/or instructor at the University of Akron (1998-2001), the Rochester Institute of Technology (2001-2005), and Robert Morris University (2005-2008).

Sometime after his third academic appointment, CalU hired Plaintiff in 2008 as an Assistant Professor in the Art Department to teach graphic design courses.[1] All Employee Defendants worked with Plaintiff at CalU, a constituent institution of the Pennsylvania State System of Higher Education ("PaSSHE"). Defendant Harrison, as Departmental Chair, was Plaintiff's initial supervisor; Defendants Miecznikowsi, Bové, and Lloyd were Plaintiff's departmental colleagues. Those four faculty members allegedly constituted a distinct clique within the Art Department.[2]

While serving as an Assistant Professor at CalU, Plaintiff allegedly performed very well in the areas of teaching, creative work/scholarship, and service. By way of example, Plaintiff avers that he consistently received favorable evaluations and recommendations for the renewal of his yearly contract as well as positive peer evaluations with no recommendations regarding improvement. Many of these commendations supposedly came from Harrison, who applauded Plaintiff's prowess in the classroom, his record of creative production and professional activity,

---

1. Plaintiff was the second choice to fill this position; CalU initially offered the job to a significantly younger male candidate, W. Anthony Watkins. According to the Complaint, Harrison falsely told Plaintiff that he was the first choice and directed hostility toward the three members of the all-female search committee who chose not to invite his preferred choice for the position, Richard Helfrich, onto campus for an interview.
2. Plaintiff avers that during his time at CalU, he was the only faculty member in graphic design over fifty (50) years of age. Within the Art Department, Harrison and Bové were allegedly significantly younger than Plaintiff. *See* Pl.'s Compl. at 3-4, ECF 25. Plaintiff also claims that Helfrich, Harrison's preferred choice for the position that Meyers ultimately filled, is approximately fifteen (15) years his junior.

and his service-minded attitude. *See e.g.*, Pl.'s Compl. at 5, ECF 25 (noting that Harrison made the following overall comment: "[Prof. Meyers] has quickly become a very important member of the department of Art and Design. I commend him on his enthusiasm and dedication to teaching, scholarly activity, and departmental service.") (alteration in original). The sole criticism of Plaintiff's performance was that he failed to incorporate the latest technology in his teaching, a claim that he submits can be construed as an expression of ageism.

From the Fall Semester of 2009 through the Spring Semester of 2010, Plaintiff chaired a search committee charged with hiring another graphic design instructor. Among the candidates were Helfrich (Harrison's preferred choice) and Brigette Marshalla, allegedly a much more-qualified applicant than Helfrich. The governing Collective Bargaining Agreement ("CBA") between the PaSSHE and the Association of Pennsylvania State College and University Faculty provided the applicable procedures for selecting one of those candidates for the tenure-track position.

Pursuant to the CBA, a candidate must receive a vote of confidence from the majority of the departmental faculty for his or her name to be advanced to the chair, the college dean, and the university president for recommendation and hiring. The Art Department faculty, with ten members at the relevant time, ultimately cast their ballots on the candidates: Helfrich received only two confidence votes and Marshalla achieved seven confidence votes. Accepting the results of the voting, Plaintiff forwarded only Marshalla's name to the CalU Administration with the appropriate documentation to indicate that she was the preferred candidate of the Department. The administration also accepted the results and the committee officially completed its work.

Apparently upset that Helfrich had not been selected, Harrison allegedly started to exhibit hostile behavior towards Plaintiff and convened a Department meeting to talk about the selection

process. At the three-hour meeting on May 18, 2010, Harrison and others in the Department who shared his views allegedly "bullied" some faculty members to change their vote so that Helfrich, a male candidate, would be put forth as their preferred choice.[3] The meeting seemingly concluded with an unauthorized "re-vote," which was not approved by the CalU administration. After the meeting, Plaintiff claims that Harrison "celebrated with liquor" outside of the building which housed the Art Department.

Two days later, on May 20, 2010, Harrison e-mailed Plaintiff with directions to change the list of recommended candidates to include both Marshalla and Helfrich. Plaintiff refused to comply with the request of Harrison based partially on the advice of Dr. Lisa McBride, an administration designee who had been advising Plaintiff throughout the selection process. Dr. McBride informed Plaintiff that the search would have been cancelled immediately and deemed a "failed search" had he changed the vote. Dr. McBride also requested the minutes from the "re-vote" meeting, leading Harrison to submit falsified records which indicated that Helfrich received sufficient support from the Department even though only five faculty members (*i.e.*, not a departmental majority) could have voted in his favor.[4] The Provost ultimately cancelled the search, and CalU did not fill the position. After these events, Dr. McBride and other members of the Art Department warned Plaintiff about the possibility that Harrison and his cohorts would retaliate against him. *See* Pl.'s Compl. at 12, ECF 25 ("[F]or standing up to the 'boys' club' in the Department, Prof. Aston told Prof. Meyers shortly after the May 18th meeting that he was '. . . no longer part of Prof. Harrison's tribe.'").

---

3. Plaintiff avers that the coercive techniques used by Harrison and his allies included lunging at colleagues, using expletives, and throwing wads of paper. Plaintiff highlights that two or three faculty members objected to the "re-vote meeting" and did not attend for fear of bullying by Harrison. Such "bully tactics" had allegedly been used by Harrison during the previous search for a graphic design professor in 2008.

4. Plaintiff reaches that conclusion after alleging that three of the ten faculty members either voted against or expressed their intent to vote against Helfrich, that Miecznikowski left the room prior to the vote, and that Harrison could not vote as Department Chair.

According to the Amended Complaint, Harrison and the other Employee Defendants did indeed direct animus toward Plaintiff and conjured up a plan "to get rid of" him shortly after the meeting. Pl.'s Compl. at 12, ECF 25. Harrison and the other Employee Defendants did not, however, begin to execute their plot until the Fall of 2010.

That semester, Harrison "hand-picked" Miecznikowsi, Bové, and Sue Mohney in violation of the CBA to serve on an evaluation committee that was to evaluate the efficacy of Plaintiff's work in the Department. The evaluation committee ultimately made negative remarks about Plaintiff and recommended that the University not renew him for the 2011-12 academic year. Reviewing the committee's recommendations, Harrison also asserted (in stark contrast to his earlier assessments) that Plaintiff's research/creative work was unsatisfactory and his service was severely lacking, claimed that Plaintiff was a liability to the Department, and criticized the efforts of Plaintiff as head of the search committee despite his earlier submission of Marshalla's name to the CalU administration upon her selection in accordance with the CBA. To the Plaintiff, the Review Committee's recommendation and Harrison's conclusions were based on false information and arbitrary standards contrary to the positive peer evaluations and strong student comments that he consistently received, ample examples of which are averred throughout the Complaint.

After the Committee and Harrison concluded their evaluations, they submitted a report to the then-Dean of the CalU College of Liberal Arts, Michael L. Hummel. Hummel also received an appeal from Plaintiff in which he attempted to rebut the perceived factual inaccuracies in the recommendation of non-renewal and complained that many of the procedures set forth in the CBA regarding faculty evaluations were completely ignored, such as the requirement that he have reasonable opportunity to discuss his evaluation before the committee passes it along for

further review and/or adoption. Upon review, Hummel apparently ignored the efforts of Plaintiff and adopted the recommendations of the evaluation committee wholesale despite several other faculty members voicing their support for Meyer's work.

The following month, Plaintiff and other professors in the Art Department filed a group grievance regarding the "abusive language, bullying, sex discrimination, third-party harassment, and retaliation" they faced by their peers. Pl.'s Compl. at 20, ECF 25. Those faculty members also brought the grievance to highlight the Department's lack of adherence to CBA guidelines and procedures, specifically noting that the minutes from the "re-vote" meeting did not accurately reflect the business conducted. Hummel later met with the disgruntled faculty to discuss the standard for evaluating teaching performance and the weight the administration gave to criteria such as student and peer evaluations, classroom visitations, quality of syllabi, and project briefs. Hummel apparently responded in a hostile manner, and Plaintiff requested a copy of the standards under which he was evaluated pursuant to the Pennsylvania Right to Know Law. In response, Plaintiff was forwarded a copy of the CBA.

Much like Hummel, Angelo Armenti, then-President of CalU, also adopted the negative evaluation of Plaintiff and informed Meyers of his termination in a letter dated January 21, 2011. The letter stated that the Committee, Harrison, and Hummel ranked Plaintiff as lacking in service, teaching, and scholarly/creative work. Plaintiff submits that Mohammed Yama, then-Interim Dean of the College of Liberal Arts at CalU, rebutted a number of these claims in April 2011 when he informed CalU Provost Gerri Jones that he "was getting rid of the wrong guy"; that is, CalU should have terminated Harrison as opposed to Meyers. Pl.'s Compl. at 21, ECF 25. Jones did not reverse course regarding Plaintiff's termination. Instead, Jones appointed an interim Chair for the Art Department "because of the history of abuse, harassment, and bullying

under Harrison" and implemented a new rule (referred to as "the Robert Rule" by Dr. McBride) that now disallows non-tenured faculty members from serving as chair of a search committee "because of the harassment and retaliation that happened to [Plaintiff]." Pl.'s Compl. at 22, ECF 25

After CalU did not renew Plaintiff's employment for the following academic year, his teaching duties were reassigned to "significantly younger faculty members: Harrison and Spenser Norman." *Id.* Norman is approximately six years younger than Plaintiff; Harrison is roughly ten years younger than Plaintiff.

B. Procedural History

Plaintiff filed a charge of gender discrimination, age discrimination, and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") on April 13, 2011, which was cross-filed with the Pennsylvania Human Relations Commission ("PHRA"). CalU is the only current Plaintiff named in the caption of the EEOC filing, as the Employee Defendants are only mentioned in the body of the Charge. Moreover, the Charge identifies Harrison on over one dozen occasions, mentions Bové twice and contains one fleeting reference to Miecznikowski and Lloyd. The EEOC issued Plaintiff a "Right to Sue Letter" on June 7, 2012.

Thereafter, on August 30, 2012, Plaintiff initiated this action by the filing of a six-count Complaint again his former employer, CalU, and several of its employees, alleging that they violated the prohibitions on retaliation in Title VII and Title IX, the Age Discrimination in Employment Act ("ADEA"), the First Amendment's protection against Free Speech, and the provisions of the PHRA that bar retaliation and age discrimination in the workplace. Defendants filed both an Answer and a Motion for Judgment on the Pleadings on November 16, 2012. Before that Motion was ruled upon, Plaintiff sought and this Court granted him leave to file an

Amended Complaint in which he would ultimately drop his ADEA claim against the University and aver additional factual support for the remaining counts. Defendants now seek to dismiss the Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6).

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)  When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step

approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim."" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See*

*Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

As an initial matter, the Court must address the argument advanced by Plaintiff with regard to striking portions of Defendant's brief for their technical non-compliance with the page limitations set forth in the Practices and Procedures of the undersigned. This Court's Practices and Procedures mandates that principal briefs which involve the merits of the case may not exceed twenty (20) pages unless a party seeks leave to file excess pages. *See Practices and Procedures of Judge Terrence F. McVerry*, § II.B, *available at* http://www.pawd.uscourts.gov/Documents/Judge/mcverry_pp.pdf (effective March 1, 2010); *see also Local Civil Rules of Court,* LCvR 7(A), *available at* http://www.pawd.uscourts.gov/Documents/Forms/lrmanual.pdf (effective Feb. 1, 2013) ("Motions in all civil actions pending in this Court shall comply with . . . the orders of the

assigned Judge and the practices and procedures of the assigned Judge . . . .").  Counsel for Defendants filed a thirty-two (32) page brief in support of their motion to dismiss to which Plaintiff objects.[5]  Accordingly, Plaintiff requests that the Court strike the twelve (12) additional pages, which contains roughly two pages of argument regarding Plaintiff's alleged failure to exhaust his administrative remedies and another ten pages of briefing advancing Defendant's theory on why Count Five should be dismissed.

While the concerns raised by Plaintiff are certainly understandable, the Court declines his invitation to strike the brief.  Nevertheless, Plaintiff can rest assured that the Court gave very little weight to the arguments advanced in the extra pages.  Moving forward, the Court notes that the Local Rules and this Chambers' Practices and Procedures are not suggestions that counsel may wholly disregard at his whim or convenience.

The Court now turns to the substance of the brief(s).  The Amended Complaint filed by Plaintiff presents a number of federal employment and civil rights claims, as well as pendent state law causes of action.  The Court will address the counts seriatim.

### A. Count One: Title VII Retaliation Claim Against CalU

At Count One of the Amended Complaint, Plaintiff avers a claim for Retaliation for Protected Activity against CalU in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*  Plaintiff submits that his opposition to the discriminatory hiring practices of the University constituted protected activity under Title VII, that the negative evaluation of Plaintiff was pretextual, that he suffered an adverse employment action in the form of his ultimate termination from CalU, and

---

5.  The length of the brief can be partially attributed to Defendants' repeated use of page-length recitations copied verbatim from the Amended Complaint and their use of a two-page block quotation as the Standard of Review taken from a previous Memorandum Opinion of this Court.  This entire discussion could have been averted had counsel adhered to the Reference Material available on the website for the United States District Court for the Western District of Pennsylvania.  *See Motions Practice and Brief Writing for Attorneys Appearing in the Western District of Pennsylvania, available at* www.pawd.uscourts.gov/Documents/Forms/MotionsPracticeandBriefWriting.pdf ("'Boilerplate' standards sections are rarely useful (or considered), and they serve only to consume a party's allotted page limit.").

that the temporal proximity between the events is unusually suggestive. Thus, as Plaintiff reasons, the relatively short span between the claimed protected activity and the alleged retaliation creates an inference of causality even in the absence of additional evidence.

To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: (i) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006).

With respect to the first element, the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause"). *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006). "Opposition" to discrimination can take the form of "informal protests of discriminatory employment practices, including making complaints to management." *Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir.2006). With regard to the third prong, the court may consider "a broad array of evidence." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). Our court of appeals "has focused on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *Culler v. Shinseki*, 840 F. Supp. 2d 838, 846 (M.D. Pa. 2011), *aff'd sub nom.*, *Culler v. Sec'y of U.S. Veterans Affairs*, 12-1574, 2012 WL 6622604 (3d Cir. Dec. 20, 2012) (citing *Abramson v. William Paterson Coll.*, 260 F.3d 265, 288 (3d Cir. 2001)); *see Baur v. Crum*, 882 F. Supp. 2d 785, 803 (E.D. Pa. 2012) ("Unusually suggestive temporal proximity between protected activity and adverse action may be sufficient on its own to create an inference of causality.").

Those two means are not exclusive, and a district court may consider "whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *Baur*, 882 F. Supp. 2d at 803 (quoting *Farrell*, 206 F.3d at 280). "Among the other kinds of evidence that a court may consider are ongoing antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id.* at 279–81. These inquiries are necessarily fact-specific. *See Kant v. Seton Hall Univ.*, CIV.A 03-6135WHW, 2008 WL 65159, *14 (D. N.J. Jan. 4, 2008) *aff'd*, 289 F. App'x 564 (3d Cir. 2008) (citations omitted).

Here, although not particularly clear, it appears that the University directs its challenge primarily toward the first and third prong of the retaliation analysis. CalU attacks the first prong by arguing that the December 2010 grievance cannot constitute protected activity because Paragraph 160 of the Amended Complaint indicates that Armenti decided to terminate Plaintiff a year earlier (*i.e.*, January 29, 2010). *See* Pl.'s Compl. at 19-20, ¶ 160, ECF 25 ("In his Nov. 22, 2009 evaluation, Dean Hummel accepted wholesale the spurious evaluation of Prof. Meyers created by Prof. Harrison; this evaluation was also adopted by former CalU president Angleo Armenti [ ] in a Jan. 29, 2010 letter notifying Prof. Meyers that his contract would not be extended."). This theory does not persuade the Court. CalU's argument rests on that which appears to be a typographical error in the Amended Complaint and a review of the timeline outlined therein reflects the following: CalU hired Plaintiff in 2008; Plaintiff chaired the search committee from the Fall Semester of 2009 through the Spring Semester of 2010; Harrison convened the "re-vote" meeting in May 2010; Harrison hand-selected the negative evaluation committee in the Fall of 2010; the faculty members submitted their grievance in December 2010; and Armenti terminated Plaintiff in January 2011. *See* Pl.'s Compl. at 21, ¶ 169, ECF 25 ("In a

January 21, 2011 letter, Pres. Armenti notified Prof. Meyers of his termination, and in doing so noted that his decision was based on the spurious evaluations conducted by the Departmental evaluation committee and Dean Hummel.").  There are no other factual averments to support the University's position.

Turning to the third element, CalU claims that Plaintiff cannot show a causal connection between the protected activity and the retaliatory action as required under Title VII because he has made no allegations regarding the timing of his complaints beyond a few generic averments. This position is likewise unavailing.  The Amended Complaint specifies the timing of the formal December 2010 grievance in which Plaintiff and other faculty members complained about abusive language, bullying, sex discrimination, third-party harassment, and retaliation.  A fair reading of the Amended Complaint also permits the Court to identify the timing between more informal protected activity in which Plaintiff engaged and other adverse employment actions he potentially faced.  Thus, accepting the veracity of the well-pleaded factual averments, Plaintiff has adduced sufficient support to overcome this Motion to Dismiss as to Count One of Plaintiff's Amended Complaint.

B.  Count Two: Title IX Retaliation Claim Against CalU

At Count Two of the Amended Complaint, Plaintiff advances a claim for Retaliation for Protected Activity against CalU in violation of Title IX, 20 U.S.C. § 1618, *et seq.*  All parties generally reiterate the same arguments as above in support of their respective positions.

To state a prima facie case for retaliation under Title IX, a plaintiff must show "(1) [ ]he was engaged in protected activity; (2) the plaintiff experienced a materially adverse action after or contemporaneously with the protected activity; and (3) a causal link exists between the protected activity and the adverse action."  *Cabrera-Diaz v. Penn Kidder Campus Jim Thorpe*

14

*Area Sch. Dist.*, 3:08-CV-2192, 2011 WL 613383, *4 (M.D. Pa. Feb. 11, 2011) (quoting *Weston v. Pennsylvania,* 251 F.3d 420, 430 (3d Cir. 2001)). "Courts typically apply the same standards to retaliation claims arising under Title IX as they do to retaliation claims arising under statutes such as Title VII and the PHRA." *Toth v. California Univ. of Pennsylvania*, 844 F. Supp. 2d 611, 642 (W.D. Pa. 2012) (citing *Dawn L. v. Greater Johnstown School District*, 586 F.Supp.2d 332, 373-374 (W.D. Pa. 2008)).

Accordingly, as the Court discussed the standards for a retaliation claim under Title VII above, it need not repeat the analysis with regard to Title IX. Therefore, the Court likewise concludes that Plaintiff has stated a plausible claim for relief at Count Two of Plaintiff's Amended Complaint.

### C. Count III: Section 1983 Claim Against Employee Defendants

At Count Three of the Amended Complaint, Plaintiff sets forth a retaliation claim against the Employee Defendants under 42 U.S.C. § 1983 predicated on the First Amendment. Plaintiff brings suit against the Employee Defendants in both their official and individual capacities. The Court will address each claim in turn.

#### 1. Official Capacity Claims

The Employee Defendants first request that the Court dismiss the official capacity claim filed against them based on the immunity they enjoy as state officials under the Eleventh Amendment. They also contend that Plaintiff has not alleged an ongoing violation of federal law to implicate the doctrine of *Ex parte Young*, an exception to Eleventh Amendment immunity.

Plaintiff disputes that the Amended Complaint does not outline violations of federal law. To the Plaintiff, the Amended Complaint sufficiently contains "averments of ongoing institutional sexism" and "facts suggestive of institutional ageism." Plaintiff further claims that

the injunctive relief sought, reinstatement, "might remedy the ongoing violations." The Court does not agree.

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. 11; *see also Toth*, 844 F. Supp. 2d at 649 ("Unlike Title VII and Title IX, § 1983 has not been construed as an abrogation of the States' Eleventh Amendment immunity.") (citing *Quern v. Jordan*, 440 U.S. 332, 342–345 (1979)). The Supreme Court has stated that the presupposition confirmed by the Eleventh Amendment is that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (internal citation omitted). The immunity applies not only to the state itself, but also to state agents and state instrumentalities. Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or the issue of whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state." *Regents of the University of Calif. v. Doe*, 519 U.S. 425 (1997).

CalU is a constituent member of the Pennsylvania State System of Higher Education, and as such it is an arm of the state for Eleventh Amendment purposes. *See Toth*, 844 F. Supp. 2d at 648 (citing *Skehan v. State System of Higher Education*, 815 F.2d 244, 247-249 (3d Cir.1987)) (finding that the PaSSHE "is, effectively, a state agency and therefore entitled to the protection of the eleventh amendment in the federal courts"). The Employee Defendants are state agents

sued in their official capacities, and therefore, are entitled to immunity absent the application of any exception. *See e.g.*, *Seybert v. W. Chester Univ.*, 83 F. Supp. 2d 547, 553 (E.D. Pa. 2000).

The United State Court of Appeals for the Third Circuit has identified three primary exceptions to Eleventh Amendment immunity. *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Those exceptions are "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Id.* "The third exception, the sole exception invoked here, is the doctrine *of Ex parte Young*, 209 U.S. 123 (1908)." *Id.*

To determine whether the doctrine of *Ex parte Young* presents an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Service Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). The invocation of this exception also requires that "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an official's future conduct and cannot be retrospective, such as money damages." *MCI Telecommunication Corp. v. Bell Atlantic-Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citations omitted).

Here, Plaintiff's Amended Complaint does not adequately set forth an ongoing violation of federal law. Although Plaintiff attempts to classify specific paragraphs in the Amended Complaint as ongoing violations, each of those factual allegations describe only past actions. *See, e.g.*, Pl.'s Compl. at 12, ¶¶ 101-03, ECF 2. Nowhere in the Amended Complaint does Plaintiff provide sufficient support that would allow the Court to conclude that the conduct mentioned in those averments remains pervasive. Plaintiff also cannot properly rely on this

exception based on the relief sought. Damages alone are insufficient under controlling precedent and the Employee Defendants are arguably powerless to provide Plaintiff with the only prospective relief specified. Therefore, the Court will dismiss the official capacity claim against the Employee Defendants and will not grant leave to amend, as it would be futile.

### 2. Personal Capacity Claims

The Employee Defendants next seek dismissal of the personal capacity claim, arguing that Plaintiff was not speaking as a citizen about a matter of public concern at the time he made his complaints. Put differently, CalU submits that Plaintiff's complaints were purely personal and only peripherally implicated a wider pattern of discriminatory conduct in the workplace. This argument is without merit.

To prevail on a First Amendment retaliation claim brought pursuant to § 1983, a plaintiff must establish that (i) he engaged in protected speech, (ii) his interest in the protected speech outweighs the employer's countervailing interest in promoting the efficiency of the public service it provides to its employees; and (iii) the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001). This test has been somewhat modified by the United States Supreme Court in the public employer-employee context. *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011); *Garcetti v. Ceballos*, 547 U.S. 410(2006).

In *Garcetti*, the Supreme Court explained that when a citizen enters government service, he or she must accept certain limitations on his or her freedom because government employers, like private employers, need a significant degree of control over the words and actions of their employees in order to efficiently provide public services. 547 U.S. at 418-19. "To be protected, the speech must implicate a matter of public concern and must outweigh the employer's interest

in the effective operations of its public services. Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008). While public employees are empowered to speak on matters of public concern, they are not permitted to "constitutionalize every grievance." *Garcetti*, 547 at 420; *see also Putaro v. Carlynton Sch. Dist.*, 615 F. Supp. 2d 390, 395 (W.D. Pa. 2009) (discussing the requirements for a First Amendment retaliation claim predicated on the petition clause).

Whether an employee's speech is protected by the First Amendment is a question of law for the Court to decide. *Miller*, 544 F.3d at 548. As the Employee Defendants correctly highlight, complaints which seek to expose discriminatory practices or harassing policies may indeed constitute a matter of public concern while complaints about individualized mistreatment in the workplace will not have constitutional significance. *See Miles v. City of Philadelphia*, CIV.A. 11-4040, 2013 WL 125186, *3 (E.D. Pa. Jan. 10, 2013) (collecting cases).

Here, the Employee Defendants claim that Plaintiff's speech and grievances only pertain to either violations of the CBA or purely personal complaints about his role in the search committee. However, viewed in the light most favorable to Plaintiff, his allegations extend beyond individual performance disputes and the periphery of alleged gender discrimination. Rather, Plaintiff avers that he complained to the CalU Administration about the discriminatory search process and filed a grievance regarding discrimination, harassment, and retaliation that he and other members of the faculty faced by the Employee Defendants. Those allegations, taken as true at this stage of the proceedings, deal with matters of public concern, such as whether a state university was abiding by federal and state law. Therefore, the Court will not dismiss the personal capacity claim of Count Three of Plaintiff's Amended Complaint at this time.

D.  <u>State Law Claims</u>

At Counts Four and Five of the Amended Complaint, Plaintiff brings suit for alleged violations of the PHRA, 43 P.S. § 951, *et seq.*  Count Four states an equivalent pendant claim for retaliation; Count Five states a cause of action for age discrimination arising under state law.

The Employee Defendants contend that all claims against them must be dismissed for failure to exhaust administrative remedies because Plaintiff did not name them as Respondents in his EEOC charge.  Plaintiff acknowledges that the Employee Defendants were not specifically named in his administrative claims case, but contends that the EEOC filing was sufficient to put them on notice because they are identified in the body of the charge.  This position is unavailing.

When filing an administrative charge with the PHRC, Pennsylvania law requires that a plaintiff provide the name and address of the respondent alleged to have committed the unlawful discriminatory practice of which a plaintiff complains.  43. P.S. § 959.  Noncompliance with the applicable procedures will generally bar a later claim.  *See, e.g.*, *Hajzus v. Peters Twp. Sch. Dist.*, 2:06CV1401, 2007 WL 917082 (W.D. Pa. Mar. 23, 2007).  However, in *Glus v. G.C. Murphy Co.*, our court of appeals set forth four factors to determine whether a party not named in an EEOC charge can nonetheless be named as a party in a subsequent civil suit: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way

represented to the complainant that its relationship with the complainant is to be through the named party. 562 F.2d 880, 887-88 (3d Cir. 1980).

The two purposes of requiring a party to be named in the administrative charge are: (1) to give that party notice of the allegations; and (2) to provide an opportunity for voluntary compliance to remedy the situation without resort to litigation. *Id.* at 888. The *Glus* Court cautioned that where full compliance with the administrative formalities can reasonably be expected, it will still be required. *Id.* The goal of informal conciliation must be balanced against the availability of access to the federal courts without undue procedural encumbrances "especially when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance." *Id.*

Here, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to the Employee Defendants. Plaintiff's EEOC charge only contains two references to Bové and one fleeting reference to Miecznikowski and Lloyd. These references only note that all Employee Defendants planned "to get rid of" Plaintiff after he would not allow them to violate the applicable search committee procedures and that Bové additionally served on the Evaluation Committee in which he commented that he did not consider the eighty (80) hours Plaintiff spent renovating a classroom as "service." These references hardly put Bové, Miecznikowski and/or Lloyd on notice that they engaged in any allegedly discriminatory conduct.

Plaintiff's charge did make several references to allegedly discriminatory conduct taken by Harrison. Nevertheless, the elements of the *Glus* test have not been satisfied. Harrison was Plaintiff's immediate superior, so the latter knew the Defendant Harrison's role and could have named him as a Respondent. The interests in obtaining voluntary conciliation of CalU (a public university part of the PaSSHE) and Harrison (an individual) are not so similar that it was

unnecessary to specifically include Harrison in the administrative process. Harrison was actually prejudiced due to his absence from the administrative process because he was deprived of the opportunity to informally resolve the claims Plaintiff now asserts. Finally, there is no allegation that Harrison represented to Plaintiff that he should be contacted only through CalU.

Therefore, the Court concludes that Plaintiff has not exhausted his administrative remedies under the PHRA with respect to his claims against any of the Employee Defendants. The Court will therefore dismiss the state law causes of action.

## IV. Conclusion

Based on the foregoing reasons, the motion to dismiss will be granted in part and denied in part. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT MEYERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:12-cv-1258** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE CALIFORNIA UNIVERSITY OF** | ) | |
| **PENNSYLVANIA, GREG HARRISON,** | ) | |
| **RICHARD MIECZNIKOWSKI, JIM BOVÉ and** | ) | |
| **SCOTT LLOYD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER OF COURT

AND NOW, this 4th day of March 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. No. 26), is **GRANTED IN PART AND DENIED IN PART** as follows: (1) Count One may proceed as pled; (2) Count Two may proceed as pled; (3) the personal capacity claims in Count Three may proceed as pled; the official capacity claims in Count Three are dismissed with prejudice; (4) Count Four is dismissed with prejudice; and (5) Count Five is dismissed with prejudice.

Plaintiff shall file an Answer to the Amended Complaint on or before March 18, 2013.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **James B. Lieber**
Email: jlieber@lhhb-law.com
**Jacob M. Simon**
Email: jsimon@lhhb-law.com
**Scott A. Bradley**
Email: sbradley@attorneygeneral.gov